UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARIA BURTCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23CV15 HEA |
| | ) |
| A.T. STILL UNIVERSITY OF | ) |
| HEALTH SCIENCES, | ) |
| | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6), [Doc. No 20]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion to Dismiss will be granted.

### Facts and Background[1]

Plaintiff filed this action alleging violation of Title II of the Civil Rights Act of 1964 (Count I); violation of R.S.Mo. § 213.065 (Count II); breach of contract (Count III); breach of the implied covenant of good faith and fair dealing; (Count IV); and promissory estoppel (Count V). Plaintiff's Amended Complaint alleges the following:

---

[1] The recitation of facts is taken from Plaintiff's Amended Complaint and is set forth for the purposes of this motion only.  It in no way relieves the parties of the necessary proof thereof in later proceedings.

Plaintiff was a medical student at Defendant's medical school in Kirksville, Missouri. She entered the program in the fall of 2019. She completed her second year of medical school in the spring of 2021.

Defendant "welcomes and encourages any person who would like to visit [its] campus" to schedule a tour. Defendant also hosts conferences and other events on its Kirksville campus.

Third-year medical students take few actual classes, spending most of their time working in clinical placements with external hospitals that give them real-world experience. Clinical placements – or rotations as they are commonly called – are not spur of the moment decisions. Medical students apply for rotational locations months or even a year in advance of those rotations actually beginning. Rotational placements are often competitive.

In 2020, Plaintiff applied for a clinical rotation spot in Arizona. Defendant granted Plaintiff's application for clinical rotation spots in Arizona in January 2021, setting her up to complete all of her clinical rotations in Arizona.

In May 2021, Defendant informed Plaintiff that it would require her to receive a COVID-19 vaccination as a prerequisite for completing her clinical rotations. It informed her that its clinical partners were requiring the vaccination of all clinical rotational employees.

On May 20, 2021, Plaintiff informed Defendant that her religious beliefs would not permit her to receive a COVID-19 vaccination and requested a religious exemption. On May 25, 2021, Dr. Saroj Misra – Defendant Associate Dean of Clinical Affairs – denied Plaintiff's religious exemption request. He later informed her of the reason why: "You have requested an exemption for religious reasons but accepted other vaccinations during the course of matriculation and being a student. I spoke with our legal department, and they agreed on the fact that immunizations cannot be individually picked for exemption for religious reasons."

Plaintiff received the Hepatitis B series and influenza vaccines in her first year of medical school in 2019. Subsequently, her religious beliefs evolved, and her knowledge of vaccines increased.

On October 5, 2020, Plaintiff applied for a religious exemption from the influenza vaccination requirement on the same grounds as her objection to the COVID-19 vaccines. Defendant accepted her application and granted her a religious exemption in October 2020. After Plaintiff's email exchange with Dr. Misra, Defendant provided her with an "updated" immunization record on June 2, 2021. In that "updated" record, Defendant altered its records on Plaintiff's vaccination status to change her influenza vaccination status from religiously exempt to exemption requested.

After Dr. Misra denied Plaintiff's religious exemption from the COVID-19

3

vaccination, Defendant gave her an ultimatum: either take the COVID-19 vaccination or be removed from her assigned clinical rotations in Arizona. It further informed her that, if she elected the latter option, she would be required to take at least a six-month leave of absence.

Plaintiff reiterated to Defendant that she would not take the COVID-19 vaccination and asked if any hospitals within Defendant's rotations network would be willing to accommodate her. Defendant officials informed her that none of its Arizona hospital partners would accommodate her.

Between June 2 and June 10, 2021, Plaintiff then contacted the hospitals on her rotations list and inquired as to whether they required their employees to receive a COVID-19 vaccine. The majority of the hospitals on her rotations list informed her that they were not requiring the vaccine from their employees.

Plaintiff then informed Defendant of her findings. Defendant reiterated its prior position that it could not place an unvaccinated student into clinical rotations because hospitals would not accept an unvaccinated student.

Plaintiff, in the summer of 2021, elected to take a leave of absence, informing A.T. Still officials that she was being forced into taking it based on discriminatory conduct. After she signed and returned the request form, Defendant added its own explanation to the form and approved the leave of absence. Plaintiff did not return to Defendant.

Thereafter, Plaintiff filed a religious discrimination complaint against Defendant with the Missouri Commission on Human Rights (MCHR) via its online complaint process on or about June 8, 2021. Plaintiff obtained a right to sue letter from the MCHR on February 27, 2023,

Plaintiff alleges that as a result of Defendant's actions, Plaintiff will not be able to complete her education to become a doctor. She withdrew from the school in the summer of 2022 and has since decided not to resume her medical studies.

Defendant moves to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## Legal Standards

**12(b)(1)**

The Constitution limits federal-court jurisdiction to cases or controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citing U.S. Const. art. III, § 2). Accordingly, Plaintiff must demonstrate standing by showing that she suffered an injury in fact that is fairly traceable to Defendant's conduct and likely to be redressed by the relief sought. *Id*. at 338.

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction, including for lack of standing, *Elder v. Gillespie*, 54 F.4th 1055, 1063 (8th Cir. 2022 and "requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). The

party seeking to invoke a federal court's subject matter jurisdiction bears the burden of showing that the court has jurisdiction. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). A court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

"A court deciding a motion under Rule 12(b)(1) may assert "facial attack" or "factual attack" on jurisdiction *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). The Court must distinguish between the two. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal citations omitted). The Court also accepts as true all facts alleged in the complaint, construing all reasonable inferences in the plaintiff's favor. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In contrast, "[i]n a factual attack, the court considers matters outside the pleadings" and the non-moving party does not "enjoy the benefit of the allegations in its pleadings being accepted as true." *Osborn*, 918 F.2d at 729 n.6 (citations omitted).

**12(b)(6)**

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is

6

entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc*., 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. " *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal,* 556 U.S. at 678). In contrast, " '[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id*. (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the

7

complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Service Co*, 25 F.4th 587, 589 (8th Cir. 2022) (citation omitted). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co*., 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp*., 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. See, e.g., *Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy).

## Discussion

**Count I-Title II**

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570 U.S.

8

693, 704 (2013). Therefore, "any person invoking the power of a federal court must demonstrate standing to do so." *Id*. Standing must "persist throughout all stages of litigation." *Id*. at 705. To show standing, Plaintiff must have suffered an injury in fact, meaning "an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). That injury "has to be fairly trace[able] to the challenged action of the defendant." *Id*. (internal quotation marks omitted). And "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561, 112 S.Ct. 2130 (internal quotation marks omitted). The "irreducible constitutional minimum" required to establish standing involves three elements: (1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff, as the party invoking federal court jurisdiction, bears the burden of establishing these elements. *Id*.

> Title II provides:
>
> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion or national origin.

42 U.S.C. § 2000a(a).

  Plaintiff [is] unable to satisfy the first element. To establish standing, [she] must show [she] suffered an injury in fact that is concrete, particularized, and actual or imminent. *Braitberg v. Charter Commc'ns, Inc*., 836 F.3d 925, 929 (8th Cir. 2016) (stating that to meet the injury requirement, the injury must be "both concrete and particularized and actual or imminent, not conjectural or hypothetical"). "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). If the risk is too speculative, Article III standing is lacking. *Id*. at 437-38 (determining that "plaintiffs did not factually establish a sufficient risk of future harm to support Article III standing" because the risk that misleading credit information would be disseminated to third parties was too speculative).

*Arc of Iowa v. Reynolds*, No. 22-3338, 2024 WL 799579, at *1 (8th Cir. Feb. 27, 2024).

  In this case, Plaintiff admits she took a leave of absence. She thereafter decided not to return to medical school. Further, she fails to demonstrate any desire or attempt to return to the school. Thus, Plaintiff has not shown her alleged injury is concrete and particularized.

  Likewise, Plaintiff fails to set forth a showing that injunctive relief will prevent future harm. Plaintiff has not alleged she has attempted to reapply to the school and been refused because of the vaccination requirement for clinical courses. Plaintiff can only seek injunctive relief to redress her past injury and she does not allege that she has a concrete or imminent plan to return to the school and again be subjected to the purportedly unconstitutional policy. See *Alana S. Phillips Plaintiff - Appellant v. Dr. Carlos Rocha, Mena Reg'l Health Sys. Hosp. Comm'n*

10

*Member; Michael Myers, Mena Reg'l Health Sys. Hosp. Comm'n Member; Leon Philpot, Mena Reg'l Health Sys. Hosp. Comm'n Member; Paula Brotherton, Mena Reg'l Health Sys. Hosp. Comm'n Member; John Maddox, Mena Reg'l Health Sys. Hosp. Comm'n Member; Phillip Hensley, Mena Reg'l Health Sys. Hosp. Comm'n Member; David Gilbert, Mena Reg'l Health Sys. Hosp. Comm'n M*ember Defendants - *Appellees*, No. 23-3139, 2024 WL 1069899, at *1 (8th Cir. Mar. 12, 2024)(unpublished). Count I will be dismissed.

**Count II-Missouri Human Rights Act**

Defendant moves to dismiss Count II of Plaintiff's Amended Complaint because it, a private university, is not a "place of public accommodation" under R.S.Mo. §§ 213.010(16) and 213.065. Section 213.065 provides:

> The provisions of this section shall not apply to a private club, a place of accommodation owned by or operated on behalf of a religious corporation, association or society, or other establishment which is not in fact open to the public, unless the facilities of such establishments are made available to the customers or patrons of a place of public accommodation as defined in section 213.010 and this section.

Section 213.010(16) provides:

> (16) "Places of public accommodation", all places or businesses offering or holding out to the general public, goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public or such public places providing food, shelter, recreation and amusement…

The statute further sets out examples of places of "'public accommodation."

11

Relying on *State ex rel. Washington Univ. v. Richardson*, 396 S.W.3d 387, 396 (Mo. Ct. App. 2013), Plaintiff argues that because Defendant "welcomes and encourages any person who would like to visit [its] campus" to schedule a tour and because it hosts conferences and other events on its Kirksville campus, it is a "place of public accommodation." The Court disagrees. In *Richardson*, the Missouri Appellate Court held that because the private university defendant invited a sub-group of the general public to apply to its master's program, it qualified as a "place of public accommodation." Here, as Defendant points out, it has a special relationship with one of its enrollees that has been admitted to the medical school. The policy at issue here is with regard to its enrolled students, not the public. Defendant, as a private medical university is not a place of public accommodation such that R.S.Mo. § 213.065 applies with respect to its enrolled students and the policies that apply to them.

**Count III-Breach of Contract**

"To state a claim for breach of contract under Missouri law, [a plaintiff] must establish the existence of a valid contract, *the rights of plaintiff and obligations of defendant under the contract*, a breach by defendant, and damages resulting from the breach." *Gillis v. Principia Corp*., 832 F.3d 865, 871 (8th Cir. 2016) (emphasis in original) (citing *Lucero v. Curators of Univ. of Mo*., 400

S.W.3d 1, 5 (Mo. Ct. App. 2013)); *Hughes v. Missouri Baptist Univ.*, No. 4:19-CV-02373-AGF, 2021 WL 2042264, at *12 (E.D. Mo. May 21, 2021).

Under Missouri law, a student's enrollment at a university does not create a contractual relationship. See *Lucero*, 400 S.W.3d at 5; see also *Nickel v. Stephens College*, 480 S.W.3d 390, 398 (Mo. App. W.D. 2015). "[I]n order to assert a breach of contract claim against a university, a student plaintiff must point to an identifiable contractual promise that the [university] defendant failed to honor." *Lucero*, 400 S.W.3d at 5; Doe v. Washington Univ., No. 4:21-CV-00205-SRC, 2021 WL 4504387, at *6 (E.D. Mo. Sept. 30, 2021). This means " 'the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient.' " *Gillis*, 832 F.3d at 872 n.11 (quoting *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, No. CIV. 11-2061 RHK/FLN, 2012 WL 3430447, at *3 (D. Minn. Aug. 14, 2012)); *Yousaf v. Curators of Univ. of Missouri,* No. 4:18-CV-00321-DGK, 2019 WL 1320062, at *3 (W.D. Mo. Mar. 22, 2019).

Plaintiff claims the non-discrimination policy transcended mere aspirational language to make up a specific contract between Plaintiff and Defendant. Plaintiff's bold, unsupported conclusion fails to solidify a concrete promise or specific obligation by Defendant. *Doe v. Univ. of Missouri*, No. 19-CV-04229-NKL, 2022 WL 4043458, at *29 (W.D. Mo. Aug. 30, 2022); *Doe v. Washington*

*Univ.*, No. 4:21CV95 HEA, 2022 WL 424901, at *4–5 (E.D. Mo. Feb. 11, 2022). "The ability to unilaterally alter the terms of a contract makes the contract unenforceable. See *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776–77 (Mo. banc 2014); see also *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662–63 (Mo. banc 1988) (an employee handbook which was unilaterally prepared by an employer, and subject to change by the employer at any time, did not establish enforceable contractual rights); *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 533–34 (Mo. App. E.D. 2011) (same)." *Nickel v. Stephens Coll.*, 480 S.W.3d at 397. Count II of Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**Breach of Implied Covenant of Good Faith and Fair Dealing-Count IV**

"[A]n enforceable contract must exist before the duty of good faith and fair dealing can be implied by law into it." it." *Sigma-Aldrich Co., LLC v. Quantabio*, LLC, 4:22-CV-00090-JAR, 2023 WL 2645651, at *3 (E.D. Mo. Mar. 27, 2022). Since the Court finds there is no enforceable contract, there can be no cause of action for the breach of the implied duty of good faith and fair dealing. See *supra.*

**Promissory Estoppel-Count V**

"A claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the

14

promise could cure." *Lefebvre v. Washington Univ.*, No. 4:22-CV-01007-SRC, 2023 WL 2967783, at *7 (E.D. Mo. Apr. 17, 2023)( quoting *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. 2007) (citation omitted); see also *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 440 (8th Cir. 2013). "[P]romissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012) (internal quotations omitted), quoted in *Park Irmat*, 911 F.3d at 515. Relief under this claim is appropriate "only in extreme cases to avoid unjust results.*" Kearney Com. Bank v. Popejoy*, 119 S.W.3d 143, 146 (Mo. Ct. App. 2003) (internal quotations and citation omitted). First, the promise must be definite, and made in a contractual sense. *Clevenger*, 237 S.W.3d at 590 (citation omitted); see also *Freitas*, 703 F.3d at 440 ("In Missouri, it is required that a promise be as definite and delineated as an offer under contract law." (citation omitted)).

Plaintiff does not allege a discrete, concrete, and specific promise which was breached by Defendant. As Defendant points out, it specifically notified students that clinical placements were not guaranteed. Likewise, policy statements do not rise to the level of a specific promise made to students.

## Conclusion

Based upon the foregoing, Plaintiff fails to establish standing for her Title II claim. Plaintiff also fails to state plausible claims for violations of R.S.Mo. §213.065, breach of contract, breach of the implied duty of good faith and fair dealing, or promissory estoppel.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 20] is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED.**

A separate order of dismissal is entered this same date.

Dated this 18th day of March, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE